UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 21-11468-GAO

CHI-SANG POON,
Plaintiff,

v.

MASSACHUSETTS INSTITUTE OF TECHNOLOGY,
Defendant.

OPINION AND ORDER
March 29, 2023

O'TOOLE, D.J.

The plaintiff Dr. Chi-Sang Poon has brought the following claims against the defendant Massachusetts Institute of Technology ("MIT"): discrimination and retaliation under the False Claims Act ("FCA"), retaliation under the National Defense Authorization Act ("NDAA"), constitutional violations under the Massachusetts Civil Rights Act ("MCRA"), and breach of contract. MIT has moved to dismiss each of the claims. For the reasons set forth herein, the Court grants MIT's motion to dismiss the complaint.

Dr. Poon worked as a research scientist at MIT for nearly thirty years. MIT fired him in the wake of three overlapping incidents that occurred in the years 2016 to 2018, each of which involved Dr. Poon's escalating various issues directly to MIT leadership, MIT's partners, and the federal government. In the first of those three incidents, Dr. Poon refused to approve an invoice from Massachusetts General Hospital ("MGH"), a subgrantee of MIT, because he believed it was inflated. In the other two, Dr. Poon disputed the National Science Foundation's ("NSF") and National Institutes of Health's ("NIH") interpretations of their own grant solicitation guidelines.

To state a retaliation claim under the FCA,[1] a plaintiff must plausibly allege that he was "terminated <u>because</u> of his protected conduct." <u>United States ex rel. Karvelas v. Melrose-Wakefield Hosp.</u>, 360 F.3d 220, 235, 239 (1st Cir. 2004) (emphasis in original); <u>see also</u> 31 U.S.C. § 3730(h).

Dr. Poon, however, was fired for violating MIT's Dishonesty Policy. The termination letter he received from MIT stated that "the email record between [Dr. Poon] and various individuals and offices at NIH clearly demonstrated that [he] had misrepresented to NIH staff and to MIT Office of Sponsored Research staff what NIH leadership had told [him] about the allowability of post-submission material." (Decl. of Jennifer L. Chunias in Supp. of MIT's Mot. to Dismiss the Compl. ("Def.'s Decl."), Ex. 3 at 2 (dkt. no. 14-3).) The letter also details "a longstanding pattern of inappropriate behavior" and attached previous disciplinary letters to Dr. Poon from MIT. (<u>Id.</u> at 3). Dr. Poon has not alleged plausible factual support that MIT's stated reasons for terminating him were pretextual. <u>See</u> <u>Karvelas</u>, 360 F.3d at 240 (affirming dismissal where the plaintiff did not "allege a factual predicate concrete enough to support his conclusory statement that he was retaliated against because of conduct protected under the FCA").

Dr. Poon has not alleged that he engaged in any "protected conduct" in the first place. Protected conduct under the FCA is "limited to activities that 'reasonably could lead' to an FCA action; in other words, investigations, inquiries, testimonies or other activities that concern the employer's knowing submission of false or fraudulent claims for payment to the government." <u>Karvelas</u>, 360 F.3d at 237 (quoting <u>United States ex rel. Yesudian v. Howard Univ.</u>, 153 F.3d 731, 740 (D.C. Cir. 1998)). The complaint makes plain that MIT worked with Dr. Poon over a period of nine months to investigate and attempt to resolve the MGH invoice issue. Nor does it even

---

[1] Dr. Poon's FCA claim pertains only to the MGH invoice incident.

allege that MIT in fact submitted a claim to the government that was supported by fraudulent information. In <u>United States ex rel. Karvelas v. Melrose-Wakefield Hospital</u>, by contrast, the plaintiff alleged that he had received "directives from his immediate supervisor to complete patient evaluations even if the patients had been discharged or had died," and that those evaluations "were billed to Medicare and Medicaid." 360 F.3d at 237. Such allegations, unlike Dr. Poon's, were "sufficient to support an inference" of protected conduct. <u>Id.</u> at 239.

The NDAA's whistleblower provision, 41 U.S.C. § 4712(a)(1), also "prohibits certain entities receiving federal funds from retaliating against their employees for reporting evidence of misconduct." <u>Fuerst v. Hous. Auth. of City of Atlanta, Georgia</u>, 38 F.4th 860, 869 (11th Cir. 2022). Employees must "reasonably believe[]" that the information they report "is evidence of gross mismanagement of a Federal contract or grant, a gross waste of Federal funds, an abuse of authority relating to a Federal contract or grant, . . . or a violation of law, rule, or regulation related to a Federal contract." 41 U.S.C. § 4712(a)(1). Courts construing the NDAA have described "reasonable belief" as an objective "conclusion [that] is not debatable among reasonable people." <u>Fuerst</u>, 38 F.4th at 873 (citing <u>White v. Dep't of Air Force</u>, 391 F.3d 1377, 1382 (Fed. Cir. 2004)). In addition, the modifier "gross" indicates that the statute is limited to "particularly egregious conduct, not run-of-the-mill policy disputes between managers and employees." <u>Id.</u>

Dr. Poon fails to plead that he reported any objectively egregious conduct. He makes no plausible objective factual allegation that the MGH invoice was inflated or otherwise fraudulent, as distinguished from his own hypothesis. At best, his allegations are consistent with mere "de minimis wrongdoing or negligence." <u>Lillie v. ManTech Int'l. Corp.</u>, No. 2:17-cv-02538-CAS-SSx, 2019 WL 3387732, at *18 (C.D. Cal. July 26, 2019) (dismissing claim under the Defense Contractor Whistleblower Protection Act because the plaintiff failed to plead "gross

mismanagement"), aff'd sub nom. Lillie v. ManTech Int'l Corp., 837 F. App'x 455 (9th Cir. 2020). Nor has Dr. Poon pled facts suggesting that the NSF and NIH interpreted their own grant submission polices in an objectively unreasonable manner. See Fuerst, 38 F.4th at 868 (affirming dismissal of plaintiff's NDAA whistleblower claims where her "disclosures . . . did not rise above the level of a 'mere difference of opinion'").

The MCRA, Massachusetts General Laws Chapter 12, Section 11H, "contemplates a two-part sequence: [liability may be found where] (1) the defendant threatens, intimidates, or coerces the plaintiff, in order to (2) cause the plaintiff to give up something that [he] has the constitutional right to do." Thomas v. Harrington, 909 F.3d 483, 492 (1st Cir. 2018) (quoting Goddard v. Kelley, 629 F. Supp. 2d 115, 128 (D. Mass. 2009)). But "where the 'natural effect' of the defendant's action 'could not, and did not, have an impact on the plaintiff[] in the exercise of [a discernable] right,' as is the case here, an MCRA claim cannot survive." Salmon v. Lang, 57 F.4th 296, 318 (1st Cir. 2022) (quoting Brunelle v. Lynn Pub. Schs., 740 N.E.2d 625, 628–29 (Mass. 2001)).

Dr. Poon's own allegations demonstrate that MIT's disciplinary actions did not prevent him from exercising his constitutional right "to communicate with . . . cognizant officials of the United States Government about matters of Federal law" or "to petition the United States government for redress of grievances." (See Compl. ¶ 182 (dkt. no. 1).) When MIT asked him to stop communicating directly with the NSF and others, he continued to do so undaunted. When MIT fired him for violating its Dishonesty Policy, he brought this suit. See Brunelle, 740 N.E.2d at 628–29 (ruling that the plaintiffs "did not satisfy the elements" of an MCRA claim where, "notwithstanding the school committee's initiation of the charges against [them], the plaintiffs continued to educate their children at home during the pendency of the action").

Finally, a plaintiff claiming breach of contract "must do more than allege, in a conclusory manner, that defendant breached a contractual duty." <u>Haglund v. Estee Lauder Cos.</u>, 466 F. Supp. 3d 292, 298 (D. Mass. 2020) (citing <u>Buck v. Am. Airlines, Inc.</u>, 476 F.3d 29, 38 (1st Cir. 2007)). Rather, "[i]t is essential to state with 'substantial certainty' the facts showing the existence of the contract and the legal effect thereof." <u>Doyle v. Hasbro, Inc.</u>, 103 F.3d 186, 194 (1st Cir. 1996) (quoting <u>Pollock v. New Eng. Tel. & Tel. Co.</u>, 194 N.E. 133, 136 (Mass. 1935)).

Dr. Poon does not allege the existence of a contract that MIT breached. He "has neither quoted the language of any such contract nor attached it as an exhibit to the complaint." <u>Madden v. Ascensus Coll. Sav. Recordkeeping Servs., LLC</u>, No. 20-10565-FDS, 2021 WL 231298, at *4 (D. Mass. Jan. 22, 2021) (dismissing breach of contract claim because the plaintiff failed to explain "what obligations were imposed on each of the parties by the alleged contract"). His suggestion that the terms and conditions in MIT's employment manual constituted a contract is insufficient. The manual's very first page states that it "is not an express or implied contract." (Def.'s Decl., Ex. 9 at "Disclaimer" (dkt. no. 14-9).) And even if it were a contract, MIT did not breach it. The manual is clear that MIT may terminate an employee for "lying about matters connected with work" without any prior corrective action. (Def.'s Decl., Ex. 9 § 3.5.)

For the foregoing reasons, MIT's Motion to Dismiss (dkt. no. 12) is GRANTED.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge
